IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

GWENDOLYN S. BRYANT,
         Plaintiff,
v.                                          Case No. 5:09mc7/RS/EMT

MICHAEL J. ASTRUE
Commissioner of Social Security,
         Defendant.
_____/

# ORDER, REPORT AND RECOMMENDATION

This matter is before the court on the second "Amended Petition for Attorney's Fees" filed by Plaintiff Gwendolyn S. Bryant ("Plaintiff") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (Doc. 17). Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant"), has responded in opposition (Doc. 18).[1] For the reasons and to the extent discussed below, the court recommends that Plaintiff's petition be granted.

Plaintiff initiated this cause by filing a petition for writ of mandamus which asked the district court to direct Defendant to process her Social Security Request for Hearing; she also sought EAJA fees (Doc. 1). Defendant responded by advising the court he was "in the process of resolving the issue" and was seeking an additional thirty days "to process the Request for Hearing requested in this

---

[1] Plaintiff's initial petition for attorney's fees (Doc. 9), was rejected because it did not contain a certificate of attorney conference, as required by N.D. Fla. Loc. R. 7.1(B) (Doc. 11). Plaintiff then filed an amended petition bearing a Rule 7.1(B) certificate that indicated Defendant had been contacted and had no objection to the request for fees or the amount sought (Doc. 12). Before the time for Defendant to file a response had elapsed, however, Plaintiff filed the instant second amended petition, in which Plaintiff states that Defendant objects both to the request for fees and the amount (Doc. 17). It is Plaintiff's second Amended Petition for Attorney's Fees to which Defendant has responded (Doc. 18) and which the court herein considers. The court notes, however, that the clerk failed to terminate the first amended petition (Doc. 12) upon the filing of the second amended petition. Accordingly, as the first amended petition has now been superceded, the court shall direct the clerk to terminate it at this time.
      Additionally, the court notes that—approximately one month after Defendant filed his response—Plaintiff requested an enlargement of time in which to file a reply (Doc. 19). In ruling on Plaintiff's motion, the court noted that under Rule 7.1(C)(2), no reply memoranda may be filed absent a showing of good cause and upon leave of court (Doc. 21). The court stated that before it would consider granting a motion for an enlargement of time Plaintiff must first satisfy the court that good cause existed for permitting a reply. The motion was therefore denied without prejudice to filing a renewed motion that complied with Rule 7.1(C)(2). To date, Plaintiff has not filed a renewed motion to file a reply to Defendant's response.

case" (Doc. 7). The district court granted Defendant's request, stating a date certain by which the Request for Hearing should be processed (Doc. 8). Based on the district court's order, Plaintiff filed her initial petition for EAJA fees (Doc. 9; *see also* n.1, *supra*). Within the time allotted by the district court, Defendant filed a notice advising that Plaintiff's Request for Hearing had been processed and that a hearing would be scheduled on the next available Panama City, Florida, docket (Doc. 14). Defendant also asked that the court deny Plaintiff's petition for writ of mandamus as moot. Noting that Plaintiff had not filed a response to Defendant's notice or request, the district court denied Plaintiff's petition as moot and directed the clerk to close the file[2] (Doc. 15). Plaintiff filed an amended EAJA petition (Doc. 12; *see also* n.1, *supra*), and she subsequently filed the second amended EAJA petition now before the court (Doc. 17). In the instant petition, Plaintiff asserts she has satisfied the statute's requirements and thus is entitled to an award of attorney's fees: she is the prevailing party in this litigation, Defendant's position in the underlying agency action and this litigation were not substantially justified, and her net worth when this proceeding was filed was less than two million dollars (*id.* at 2).[3] Defendant objects to an award of fees, on the ground Plaintiff is not a "prevailing party" within the meaning of the EAJA. Defendant alternatively submits that, should the court conclude Plaintiff is a "prevailing party" who is entitled to an award of EAJA fees, the amount of fees sought is excessive and should be reduced because it impermissibly includes time for work performed at the administrative agency level.

      The EAJA allows for the award of attorney fees and other expenses against the government provided 1) the party seeking such fees is the "prevailing party" in a civil action brought by or against the United States; 2) an application for such fees, including an itemized justification for the amount requested, is timely submitted; 3) the position of the government is not substantially justified; and 4) no special circumstances make an award unjust. The absence of any one of the above factors precludes an award of fees. 28 U.S.C. § 2412(d)(l)(A), (B).

      The court first addresses Defendant's contention that Plaintiff has not satisfied the EAJA's "prevailing party" requirement. In <u>Morillo-Cedron v. Dist. Dir. U.S. Citizenship & Immigration Serv.</u>, 452 F.3d 1254 (11th Cir. 2006), the case cited and heavily relied upon by Defendant in his memorandum in opposition to the petition for fees, the Administrative Office of Appeals ordered

---

   [2] The district court did not direct the clerk to enter judgment nor did the clerk do so.

   [3] In her two-page EAJA petition, Plaintiff cites no case law in support of her contention that, under the facts of this action for mandamus relief, she has met the statutory requirements for EAJA fees. Indeed, Plaintiff does little more than cite the statute, outline the docket activities in this case, assert her entitlement to fees, and identify the amount sought. The court also notes that, at six pages, the schedule of attorney and paralegal hours attached to the motion is longer than the motion itself.

Case No. 5:09mc7/RS/EMT

the District Director of the United States Citizenship and Immigration Services ("USCIS") to take action on the plaintiffs' applications for lawful permanent residency. *Id.* at 1255. The USCIS did not timely do so. The plaintiffs then filed a mandamus action; they also sought attorneys' fees and costs under the EAJA. The district court issued a show cause order directing the USCIS to explain "why the mandamus relief requested should not be granted." *Id.* Before the court took any other action, the USCIS "voluntarily granted lawful permanent resident status" to some of the plaintiffs and scheduled interviews with others. *Id.* In an interim order, the district court required the USCIS to "proceed on the plaintiffs' voluntary adjustment status"; the district court later denied the plaintiffs' request for mandamus relief and dismissed their complaint. *Id.* Concluding that those plaintiffs to whom the USCIS had voluntarily granted lawful permanent residency status were "prevailing parties" under the EAJA because their action had caused the government to process their applications, the district court awarded EAJA attorney's fees and costs. On appeal, the Eleventh Circuit reversed the award of fees, applying Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 603, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). The Eleventh Circuit explained that "a 'prevailing party' is one who has been awarded some relief by the court; i.e., some court-ordered change in the legal relationship between the plaintiff and the defendant," and that a defendant's voluntary change in conduct "'lacks the necessary judicial imprimatur on the change.'" Morillo-Cedron, 452 F.3d at 1257 (quoting Buckhannon, 532 U.S. at 604–05). The Morillo-Cedron court concluded that the plaintiffs had not met the EAJA's "prevailing party" requirement because they had not litigated the case to final judgment:

> The record demonstrates that [the plaintiffs] did not litigate to judgment the District Director's failure to abide by the [Administrative Appeals Office] rules and process their applications. In other words, the plaintiffs did not obtain a court-ordered change in the legal relationship between them and the Government; they did not obtain relief on the merits of their claim. The Government voluntarily processed their applications and conducted interviews before the district court entered any final judgment. Moreover, the district court granted the Government's motion to dismiss because the case was moot.

*Id.* at 1258.

Recently, in the unpublished case Abdelgalel v. Holder, No. 10-10680, 2010 WL 3794650 (11th Cir. September 30, 2010), the Eleventh Circuit again addressed the EAJA's "prevailing party" requirement in a case involving the USCIS and a petition for mandamus. In Abdelgalel, the district court issued a remand order granting the plaintiff's petition and, as provided by statute, directing the USCIS to adjudicate plaintiff's naturalization application (specifically, the court directed the USCIS

to comply with its order within ninety days). *Id.* at *7. The Eleventh Circuit concluded that the district court's order had thereby afforded the plaintiff "some relief" on the merits. *Id.* The Eleventh Circuit further found that the district court's order had changed the legal relationship between the parties. The appellate court observed that the plaintiff had waited over two years for the USCIS to make a determination on his application prior to filing his action, the district court had directed the USCIS to make its determination within ninety days, and the court had also reserved the right to reassert jurisdiction if the USCIS failed to comply. The Eleventh Circuit noted that if the USCIS had not adjudicated the plaintiff's application within the time ordered by the court, the USCIS would have been in violation of the court's order. "By giving [plaintiff] a legally-enforceable right to adjudication within ninety days, the remand order changed the legal relationship between the parties." *Id.* Moreover, the court observed, the adjudication was not voluntary

> in the Buckhannon sense. Rather, at the time the application was approved, the USCIS was under a court order [pursuant to a statutory provision] to do so by [a date certain] and had no choice in the matter. This fact materially distinguishes this case from Morillo-Cedron, in which the district court had issued a show cause order, but had not yet acted on the merits of the request for mandamus relief. In other words, unlike here, the government in Morillo-Cedron acted on the plaintiffs' applications before being ordered to do so.

*Id.*; *see also* Alghamdi v. Ridge, No. 3:05cv344/RS, 2006 WL 5670940 (N.D. Fla. September 25, 2006) (in USCIS case asserting improper delay in rendering decision on plaintiff's application for naturalization, plaintiff was deemed a "prevailing party" within the meaning of EAJA, where: plaintiff achieved success on the merits of his claim in the form of obtaining a hearing on his claim and, shortly after, being naturalized; and plaintiff's success did not result from a voluntary change in conduct by defendant but rather from the court-ordered change which created a material alteration in the parties' legal relationship).

Although Defendant submits that he processed Plaintiff's Request for Hearing voluntarily and without being ordered to do so by the district court, this is not entirely correct. Defendant responded to Plaintiff's petition by asking the district court for thirty additional days in which to process Plaintiff's Request for Hearing, and the district court entered an order granting Defendant's request. In its order, however, the district court specifically stated: "Defendant *shall* process the Request for Hearing not later than **Wednesday, February 10, 2010**" (Doc. 8) (bold in original; italics added). Processing the Request for Hearing is part of the relief Plaintiff specifically seeks in her petition for writ of mandamus. This court therefore concludes that the district court's order gave Plaintiff at least "some relief" on the merits of her petition. The more critical and difficult question here is whether the district court's order effectively altered the parties' legal relationship. This court,

with some reluctance, concludes that it did. Even though the district court's order was directed to Defendant's response and request, and not to Plaintiff's petition—indeed, the petition was later denied as moot—the order *required* Defendant to process Plaintiff's Request for Hearing within a specific period.[4] Had Defendant not processed Plaintiff's Request for Hearing within the time the court expressly directed, he would have been in violation of the court's order. It therefore appears that, as in Abdelgalel, in this case the district court's order gave Plaintiff a "legally-enforceable right" to have her Request processed within thirty days, thus effectively changing the parties' legal relationship.[5] Furthermore, while Defendant may have "volunteered" to process Plaintiff's Request for Hearing, the act of processing the Request actually was no longer voluntary "in the Buckhannon sense" after the court issued its order, as he then had "no choice in the matter" but to act as directed. *See* Abdelgalel, 2010 WL 3794650, at *7. Thus, as in Abdelgalel, the district court effectively addressed the merits of the petition for mandamus relief, and Defendant acted on Plaintiff's Request for Hearing *after* the district court ordered him to do so. *Id.* For these reasons, the court feels compelled to find that Plaintiff in this case is a "prevailing party" for purposes of her EAJA petition.[6]

Defendant does not contend that Plaintiff has failed to satisfy the other EAJA requirements; nor is the court aware of any basis that dictates a different conclusion. Additionally, the court notes that Defendant agrees that, if Plaintiff is deemed to be a "prevailing party," fees should be paid in this case. Accordingly, the court concludes that an award under the EAJA is appropriate. The court

---

[4] The parties do not identify any period set by Social Security Administration rule or regulation within which Defendant must process a Request for Hearing. In arguing that through this action Plaintiff has not obtained anything that she was not already set to receive, Defendant cites 20 C.F.R. § 404.929. He notes that "[a] claimant who is dissatisfied with certain of her disability determinations may request a hearing. 'The Associate Commissioner for Hearings and Appeals . . . shall appoint an administrative law judge to conduct the hearing.'" (Doc. 18 at 4). This provision, however, does not state a period within which Defendant must process a Request for Hearing. The court conducted a brief review of associated provisions on this issue but did not locate any pertinent authority.

[5] This court might have reached a different conclusion had, for example, the district court directed Defendant to provide the court with a status report within thirty days regarding whether Plaintiff's Request for Hearing had been processed. This is not the relief, however, that Defendant requested or, consequently, that the district court granted. Instead, based on the relief sought by Defendant (that is, relief in the form of "30 additional days to process the Request for Hearing" (Doc. 7)), the district court's order directed Defendant to process the Request within thirty days—setting a discrete period of time for action, it seems, that even Defendant's regulations do not set (*see* n.4, *supra*).

[6] The court comes to this conclusion with some reservation, in part because it is evident that it was Defendant's intention to resolve the matter voluntarily and with as little court intervention as possible; due to Defendant's efforts the district court in fact was able to dispose of the substance of the petition quickly and easily; and the court ultimately dismissed the petition as moot. Moreover, in the court's view, Plaintiff has done very little to obtain the relief sought: her three-page petition (Doc. 1) merely references the Mandamus Act, 28 U.S.C. § 1361; briefly recites the facts, and demands relief in the form of a writ directing the Social Security Administration to properly process her Request for Hearing, award EAJA fees, and other such relief deemed appropriate by the court. Also, other than the petition for writ of mandamus, the three petitions for fees (and time records), and a request for additional time in which to file a reply, Plaintiff has submitted nothing to the court, much less anything that might assist it reaching a resolution of this matter.

Case No. 5:09mc7/RS/EMT

therefore must determine the amount of fees to be awarded. Here, Plaintiff's attorney (hereinafter "Petitioner") seeks fees in the total amount of $5180.00, which represents 37.8 hours of work he performed on Plaintiff's behalf (at a rate of $125.00 per hour) and 9.1 hours of work performed by his paralegal (at a rate of $50.00 per hour) (*see* Doc. 17 at 2). Defendant does not challenge the hourly rate but submits that, of the claimed hours, ten hours of attorney time and four hours of paralegal time (amounting to a total of $1450.00) are not compensable because they pertained to work performed at the administrative level; accordingly, he contends, the amount awarded should be reduced to $3730.00 (*see* Doc. 18 at 6).

The Supreme Court has indicated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983); Watford v. Heckler, 765 F.2d 1562, 1568 (11th Cir. 1985); Jean v. Nelson, 863 F.2d 759, 772–73 (11th Cir. 1988).

> This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." [ ] Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

Hensley v. Eckerhart, 461 U.S. at 433–34 (emphasis in original). *See also* Norman v. Housing Authority, 836 F.2d 1292, 1301 (11th Cir. 1988) ("Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis."). In Norman, the Eleventh Circuit indicated that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306. "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are

'excessive, redundant, or otherwise unnecessary.' Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." ACLU of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999).

This court concludes that the hourly rates sought by Petitioner are reasonable. *See* 28 U.S.C. § 2412(d)(2)(A) (stating that attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . (ii) attorney fees shall not be awarded in excess of $125.00 per hour . . . "). The court does not reach the same conclusion with respect to the number of hours claimed, however, which the court considers to be exorbitant for the type of work involved and the minimal efforts expended by Petitioner in performing it (*see n.*6, *supra*).[7]

Of the 37.8 attorney hours claimed, the court concludes that 3.2 hours (those dated February 25, 2009 through April 2, 2009) should be excluded. Those hours, while they involved efforts to obtain a hearing after Plaintiff's application for Supplemental Security Income benefits was denied, were an ordinary part of administrative proceedings at that level of review. The court further concludes that other hours are inadequately documented, excessive, or redundant and should be excluded. Petitioner represents that he expended a total of 3 hours on August 6, 2009, conferring with his staff and Social Security officials regarding Plaintiff's apparently lost or misplaced Request for Hearing; conducting a status check on the Request; and conversing with Plaintiff regarding her medical condition and the status of her Request. Three hours for this work—which seems to be largely clerical in nature—is excessive; the court concludes that 1.5 hours should be excluded.[8] Petitioner also reports, for the dates October 5, 2009 (third entry); October 7, 2009; October 20, 2009; and October 29, 2009, a total of 19.9 hours for telephone conferences with Plaintiff (apparently in connection with proceeding with the petition for writ of mandamus); conferences with his staff regarding the petition; and researching, drafting, and filing the petition. The documentation of these hours is inadequate, as it is impossible to determine how much time was spent working on the various tasks, i.e., how much time was expended on the petition and how much time was expended in conferences. In any event, of these hours, the court concludes that a maximum of 2 hours is appropriate for conferences with Plaintiff and staff. The court also concludes that 17.9

---

[7] The court cannot rely on Defendant's argument that fourteen of the claimed hours were impermissibly spent on work performed at the administrative level because Defendant does not clearly identify the disputed hours—for example, by date—and the court cannot readily identify the hours by Defendant's description.

[8] Although the hours recorded for August 10, 2009, and the first two entries for October 5, 2009, also appear to be somewhat inflated, the court will not recommend excluding any part of them.

Case No. 5:09mc7/RS/EMT

hours for preparing the bare-bones petition filed in this case is clearly excessive. At most 10 hours for researching and drafting the petition for the writ should be allowed. Therefore, as a total of only 12 hours should be permitted for these activities, 7.9 hours should be excluded. The attorney time claimed for October 2009 through January 2010—for serving the petition, conferring with staff and Plaintiff, and reviewing Defendant's response and the court's subsequent order—total 6.9 hours. These hours are not adequately documented and excessive; the court concludes that 3 hours of attorney time should be excluded. Additionally, the work attributed to Petitioner's paralegal is absolutely identical to that claimed by counsel, except for the number of hours reported (9.1). As the paralegal's reported work is duplicative of counsel's, it should be excluded. In sum, the court concludes that no paralegal hours should be awarded and that of the 37.8 hours of attorney time claimed, 15.6 hours should be excluded, leaving 22.2 compensable attorney hours. At $125.00 per hour, the amount payable is $2775.00.

As a final matter, the court notes Defendant's acknowledgment that Plaintiff has assigned any fee awarded under the EAJA to her attorney (Doc. 18 at 6). Defendant expresses no objection to this arrangement, although he states it will not preclude the United States Department of Treasury from applying the EAJA payment to offset any debt owed by Plaintiff, in accordance with 31 C.F.R. § 285.5(e)(6)(ii).[9] (*id.* at 6–7). As an assignment of benefits was included with the petition for writ of mandamus (*see* Doc. 1-9), the court recommends that payment be made to Petitioner.

Accordingly, it is **ORDERED**:

The clerk shall **TERMINATE** Plaintiff's first amended petition for attorney's fees (Doc. 12), which has been superceded by the second amended petition for attorney's fees (Doc. 17).

And it respectfully **RECOMMENDED** that:

Plaintiff's second amended petition for attorney's under the Equal Access to Justice Act (Doc. 17) be **GRANTED,** to the following extent:

---

[9] In Astrue v. Ratliff, 130 S. Ct. 2521 (2010), the Court resolved a split among certain Circuit Courts of Appeal and held that an award of "fees and other expenses" to a "prevailing party" under § 2412(d) is payable to the litigant, not to the litigant's attorney. *See also* Reeves v. Astrue, 526 F.3d 732 (11th Cir. 2008) (same). Although Ratliff and Reeves did not address the payment of EAJA fees directly to counsel where the prevailing plaintiff has assigned his or her interest to the attorney, the undersigned follows the common practice of other courts in this district and circuit by recommending payment to counsel when an assignment of benefits has been included with counsel's petition. *See, e.g.*, Turner v. Astrue, Case No. 5:07cv9/RS/EMT (awarding EAJA fee to counsel for Plaintiff where valid EAJA assignment had been made); Buffin v. Astrue, 2008 WL 2605475, at *2 (M.D. Fla. June 30, 2008) (same). *See also* Perez v. Astrue, 2010 WL 2888989, at *2 (C.D. Cal. July 20, 2010) (acknowledging a plaintiff's right to assign interest in EAJA award to attorney but noting that such assignment does not prevent an offset of the award if the plaintiff owes a debt to the government, which debt accrued prior to the assignment).

Case No. 5:09mc7/RS/EMT

Plaintiff's counsel, David E. Evans, Esquire, is entitled to recover fees in the amount of **$2775.00** for representing Plaintiff before the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 2412 ("EAJA"); the amount of attorney fees and hourly rates awarded under the EAJA are reasonable; and the Commissioner is directed to pay counsel that amount.

At Pensacola, Florida, this <u>19th</u> day of November 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**